## Pronovich et al. v. Plains Township Commissioners et al.

*Daniel J. Flood* and *James L. Brown*, for plaintiffs.
*Herman E. Cardoni*, for defendants.

VALENTINE, P. J., September 20, 1950.—The amended complaint charges that the officials of Plains Township, viz., Michael Rock, president of the board of the township commissioners; Joseph Snarski, Anthony Vestyck, John Brulo, Angelo Mancia, Adolph Cardoni, Patrick Conway and Thomas Oliver, also

commissioners of the township, and Joseph Poczatko, secretary of the board, are responsible for an alleged assault committed by two police officers of the township upon minor plaintiff. At the time of the alleged assault minor plaintiff was a prisoner, having been taken into custody by the two officers.

By opinion filed May 3, 1949, we concluded that defendant, Plains Township, could not be held liable for the acts of such officers. Plaintiffs now seek to recover against the township commissioners personally, upon the contention that they are responsible for the conduct of the officers.

The allegations of the complaint, upon which this contention is based, appear from paragraphs 4, 6, 7, 12 and 13, as follows:

"4. That for several years prior to July 10, 1948, the exact time and duration of office being unknown to plaintiffs, defendants mentioned in paragraph 3 have held the office of Commissioners of Plains Township, except Joseph Poczatko, who is and has been secretary of the board.

"6. That on or about July 10 and 11, 1948, defendants Joseph Sherin and Andrew Beganski were agents and employes of defendants, Michael Rock, president; Joseph Snarski, Anthony Vestyck, John Brulo, Angelo Mancia, Adolph Cardoni, Patrick Conway and Thomas Oliver, as the Board of Commissioners of Plains Township, being employed as police officers.

"7. That on or about July 10 and 11, 1948, defendants, Joseph Sherin and Andrew Beganski, took minor plaintiff, David Pronovich, to the Plains Township Police Station.

"12. That defendants Michael Rock, president; Joseph Snarski, Anthony Vestyck, John Brulo, Angelo Mancia, Adolph Cardoni, Patrick Conway and Thomas Oliver, Commissioners of Plains Township, and Jo-

seph Poczatko, secretary of the board, knew or should have known that defendants, Joseph Sherin and Andrew Beganski, had in the past administered beatings to prisoners who were in the custody of the Plains Township police.

"13. That the injuries sustained by minor plaintiff, and the resultant effects thereof to plaintiffs, were occasioned through the carelessness and negligence of:

"(a) Defendants Michael Rock, president; Joseph Snarski, Anthony Vestyck, John Brulo, Angelo Mancia, Adolph Cardoni, Patrick Conway and Thomas Oliver, Commissioners of Plains Township, and Joseph Poczatko, secretary of the board, jointly and severally;

"(b) in employing as policemen defendants, Joseph Sherin and Andrew Beganski, when they knew or should have known that these defendants were of a sadistic nature and character;

"(c) in retaining in their employ as policemen defendants Joseph Sherin and Andrew Beganski, when they knew or should have known that these defendants had beaten up and assaulted other prisoners prior to July 10, 1948."

The question raised by the preliminary objections is whether the allegations embodied in the complaint impose liability upon the township officials.

We know of no theory upon which the secretary of the board, Joseph Poczatko, who performed merely clerical duties, and who is not a township commissioner, could be held responsible for the official action of the board members. As to him the objections should be sustained.

We have for consideration, however, the question of the liability of the township commissioners. The authorities relied upon by the township solicitor, viz., White v. City of Casper, 35 Wyo. 371, 249 Pac. 562; Lamont v. Stavanugh et al., 129 Minn. 321, 152 N. W.

720; Craig v. City of Charleston, 180 Ill. 154, 54 N. E. 184, and Higgins v. City of Superior, 134 Wis. 264, 114 N. W. 490, are all cases which involved the question of the liability of municipalities, and not that of the municipal officials.

The question here presented, however, is the personal liability of municipal officials who have knowingly appointed or retained unfit and incompetent persons on the police force, for damages sustained as a result of injuries wrongfully inflicted by such incompetent officers.

The contention of defendant officials, as set forth in the brief of their counsel is that "the same rule of law which renders municipalities immune from liability where servants or agents are performing duties of a governmental nature, is likewise applicable to elected officers who are but an arm of the State in the exercise of their governmental and public duties and powers".

In Craig v. City of Charleston, supra, the city was held not responsible for the act of the mayor in appointing, as special policeman, a person whom he knew to be unfit for the office. It by no means follows, however, that officials who knowingly appoint incompetent and unfit persons are immune from personal responsibility when a third person is injured by the wrongful conduct of such appointees.

In Casey v. Scott, 82 Ark. 362, 101 S. W. 1152, in reaching a conclusion that a chief of police was not responsible for the acts of a dog catcher, who had, pursuant to a city ordinance, been appointed by the chief, the court said: "There is no liability in such cases, unless the appointing officer fails to exercise reasonable care in the selection of the appointee."

In Conwell v. Voorhees et al., 13 Ohio, 523, it is said (page 543):

"Public agents, . . . are not responsible for the omissions, negligence or misfeasance of those employed

under them, if they have employed trustworthy persons of suitable skill and ability, and have not cooperated in the wrong."

In Brissac v. Lawrence, 2 Blatchford (N. Y.) 121, effort was made to hold the Collector of the Port of New York responsible for the value of goods belonging to plaintiff, deposited in a custom house, and which had become lost or delivered to some persons not entitled to receive them. Plaintiff sought to show carelessness on the part of defendant as head of the custom house, asserting that the bookkeeper was a person of intemperate habits and unfit for the position.

In submitting the case to the jury the court charged:

". . . This is a suit against the collector, who did not have charge of the goods, and, in order to render him liable, you must find him to have been guilty of personal neglect, misfeasance or wrong."

The same principle has been enunciated in Robertson v. Sichel, 127 U. S. 507, where a recovery by plaintiff against a collector of customs for acts of his subordinates was reversed, the court saying (page 515) : "No evidence was given that the officers in question were not competent, or were not properly selected for their respective positions."

Municipal officials occupy positions of trust. The taxpayers are entitled to the honest and conscientious performance of the duties imposed upon them. If they act in good faith, and exercise proper and reasonable care in the selection of persons to fill the various positions under their supervision, they are not responsible for the conduct of their appointees: Huey v. Richardson, 2 Harr. (Del.) 206. But if they act corruptly or dishonestly in the making of appointments, or knowingly appoint incompetent or unfit persons, and injury results by reason of the illegal acts of such appointees, they should be required to answer.

Therefore, the preliminary objections are sustained as to defendant, Joseph Poczatko, and judgment is entered in his favor. The preliminary objections are dismissed as to other defendants, and they are required to answer the amended complaint within 20 days.